## Ann SHAPPY v. Janet KNIGHT et al

5-5825                                    475 S.W. 2d 704

Opinion delivered February 7, 1972

*Steve Herman* and *Burl C. Rotenberry,* for appellant.

*Ivan H. Smith,* for appellees.

Frank Holt, Justice. The appellant brought this action to vacate and set aside a final order of guardianship appointing appellee Janet Knight as guardian of appellant's child with the right to consent to adoption of the child without notice to or consent of appellant. The probate court refused to set the guardianship aside and dismissed appellant's complaint.

For reversal the appellant contends that the court erred in holding that Ark. Stat. Ann. § 27-833 (Repl.

1962) is not applicable in guardianship proceedings. The statute provides:

> "No judgment can be rendered against a prisoner in the penitentiary until after a defense made for him by his attorney, or, if there is none, by a person appointed by the court to defend for him."

During this guardianship proceeding the appellant was an inmate of the state penitentiary. The record does not disclose for what offense or for what length of time she was incarcerated. It appears that the child was born to appellant shortly after she became an inmate. About three months after the birth of the child she consented to the infant boy being made a ward of the juvenile authorities and placed in the legal custody of appellee Knight, Director of the Child Welfare Division of the Arkansas Department of Public Welfare. Several months later the present guardianship proceeding was instituted for adoption purposes. Admittedly, appellant never was represented nor had the benefit of an attorney during this proceeding. Notice of the guardianship proceeding was forwarded to the superintendent of the penitentiary. When he discussed this guardianship notice with appellant, she became so distraught that he immediately communicated her disapproval to an official in the Welfare Department's Division of Legal Services from whom he understood no adoption was contemplated and so assured appellant. Appellant testified that the superintendent did tell her that adoption of her child was not an issue in the proceeding and she understood her baby would be placed in a foster home pending her release. The welfare official recalled that his conversation with the superintendent of the penitentiary pertained to the notice of the juvenile court proceeding. With commendable candor and fairness this official acknowledged: "I think this is where we got our wires crossed, if we did"; and appellee-guardian likewise testified that she did not think appellant ever fully understood the adoption had occurred.

We think the wisdom of the legislature in enacting this statute in 1869 is amply demonstrated by the facts in

this case. No doubt the legislature was aware that inmates in the penitentiary are so disadvantaged in their liberties and ability to communicate their interest directly to the courts that it deemed this statute desirable to prevent misunderstandings, such as this, and to provide for the inmate's day in court. In *Puckett* v. *Needham*, 198 Ark. 123, 127 S. W. 2d 800 (1939) a divorce decree, which vested title to real property in the appellee's husband, was vacated and an order confirming a commissioner's sale and deed to the appellant and his wife, who were innocent purchasers, was set aside. There process was actually served upon appellee when she was in the Pulaski County Jail. Later she was transferred to the federal penitentiary and, as an inmate without counsel, a default judgment was rendered against her. In applying the requirement of § 27-833 that an inmate must have the benefit of counsel in that court proceeding we said:

> "*** Under the statute, the *fact* of confinement in the penitentiary deprives the court of jurisdiction until answer is filed by the defendant's attorney, or until the attorney appointed by the court has made proper defense."

See, also, *Armstrong* v. *Manzo*, 380 U.S. 545 (1965). In the case at bar we are of the view that the final guardianship order, which was made without compliance with this long-standing statute, must be vacated and set aside.

Appellees respond that a guardianship proceeding is a special proceeding and not an action under the civil code. *Nelson* v. *Cowling*, 89 Ark. 334, 116 S. W. 890 (1909). Therefore, it is asserted that the provisions of § 27-833 requiring that an inmate of the penitentiary must have the benefit of counsel is inapplicable. We cannot agree with this contention. Certainly if we recognize, as we have in *Puckett* v. *Needham, supra,* that this statute is applicable to property rights, then it strains logic and credulity to say that the legislature did not intend this statute to extend and include the rights of a natural parent-child relationship. The right of natural parents with respect to their children is one of the "highest of

946

natural rights." *Woodson* v. *Lee*, 221 Ark. 517, 254 S. W. 2d 326 (1953). Certainly, a parent-child relationship cannot be viewed as being less than rights in chattel or property. Nor can we agree that this final guardianship order is not a judgment with respect to the parent-child relationship. A judgment is a final determination of the rights of parties in an action and is tested by substance rather than form. *Melton* v. *St. Louis, I. M. & S. Ry. Co.*, 99 Ark. 433, 139 S. W. 289 (1911); Ark. Stat. Ann. § 29-101 (Repl. 1962). See, also, 49 C. J. S. Judgments § 5. The severance of appellant's relationship with her natural child by this guardianship proceeding is just as final as a decree or judgment adjudicating her property rights. The appellant is entitled to her day in court on this issue of guardianship, even though relitigation could reach the same result.

The order of the probate court is reversed and the cause remanded for proceedings not inconsistent with this opinion.

Reversed and remanded.